In the court, please call the next case. 515-0530, D'Angelo Franklin v. Workers' Compensation Comm'n. You may proceed. Thank you. May it please the court, Ms. Barbieri, my name's Michelle Rich. I represent D'Angelo Franklin in this matter. My client, as you can probably tell from reading the briefs, has worked for the City of East St. Louis for their police department for 20 years. He's been a police officer. He has had several workers' compensation claims over the years. Several? Several. Twelve. Okay. He appears to have a workers' compensation claim almost every year. I think if you worked for the City of East St. Louis Police Department, you may too, Your Honor, considering how dangerous the area is. I wouldn't think so. We're dealing with two accidents today. And neither accident was disputed by the employer. The issues that were placed in dispute by respondent at the time of trial were a causal connection with regard to both accidents, as well as liability for medical expenses based on the issue of causation, as well as prospective medical care, again, based on the issue of causation. What's interesting about the commission's decision is that even though the issue was not raised by the respondent on the stipulation sheet, as you can see by the evidence, the commission, sua sante, found that my client exceeded his choice of medical providers. Isn't the commission required by statute and enabled by statute to examine all issues raised by the case? Well, what they're not allowed to do, Your Honor, is they are not allowed to unsettle issues that are settled by the parties on the stipulation sheet. That's what the Walker case says, and I cited that in my brief. Did the parties stipulate he hadn't exceeded his number of doctors? If that issue is going to be placed in dispute,  the respondent may very well be, but that doesn't constrain the commissioner. In the commission, we have cases on it, the statute specifically says that they can examine any issues raised by the record and the stipulation. They're not bound by that stipulation sheet. They may be bound by a stipulation you enter into, but ma'am, they are not bound by the fact that you didn't enter into a stipulation. There's no stipulation in this case that he didn't exceed the number of doctors. That's not in the record. It might be somewhat inherently, you could argue it's unfair to contradict your position, but what do you make of this, some of the Klein case, 384 Illinois Appellate 3rd at 237? The commission is obligated to review all questions of law or fact which appear from the transcript of evidence. Does that sound like it would preclude the commission from looking at something? You think that's what I said, wasn't it? Yeah, I think you didn't say Klein, but I think you're essentially correct. I don't think that they are prohibited from looking at those issues, Your Honor, but what the Walker case says is that the parties in the court are bound by the stipulations. But there is no stipulation in this case. No one stipulated that this man had not exceeded his number of doctors. There is no such stipulation, is there? I disagree with that, Your Honor. Well, show me what page in the record would the stipulation be found in? Well, what I want to talk to you about is even if you find that the commission's decision on that issue was not improperly made as a matter of law, the only evidence that is in the record is that my client didn't exceed his choice of position. That's a little bit different than saying the commission shouldn't have decided. Correct. Now you want to tell us why it's not supported by the record? Correct. That's true. I would. Well, tell us why. Okay. Dr. Gornett clearly testified in his deposition that he had treated my client before and he was referred by Dr. Monhoffman and the fact that he had seen him before. And there's no other evidence in the record. Respondent didn't provide any evidence that he exceeded his choice of position. Wait a minute. I don't think that doctor said he was referred by that doctor for this injury. He said he was referred by that doctor for a prior case. No, Your Honor. He testified to, there's two spots in the record where he testified to this. So on direct examination, that's what you're referring to. And then on cross-examination, he clearly does say that he was referred to him by this, in this particular instance. And that is on page 44 of Dr. Gornett's deposition in this case. And what does he say you have up there? This patient was referred by Dr. Monhoffman and an established patient of mine. No, no. We understand he was referred by Dr. Monhoffman. It was for a prior case. Does he say in the record that he was referred in this case? That's what he testified to. His record merely says that the guy showed up. I think it's actually in the portion of the transcript that's right there. So I will, I'll get back to that issue. But I believe that he testified that he was referred by Dr. Monhoffman and self-referred from the prior case. And I think what is important to note, Your Honors, is that there's no contrary evidence here. The Commission made this decision, but there's nothing to support it in the record. It just simply said, well, we think that he exceeded his choice of physicians without any support for that. And this issue was not addressed at the time of arbitration. Respondents, counsel could have gone into that, but the first time this was ever raised was on appeal before the Commission. And the Commission's decision was the first time that it was ever addressed. So I think that that's the most glaring issue that we're asking you to consider today that we believe is certainly against the manifest witness in this case. With regard to the issue of causation, the Commission determined that my client only sustained a temporary exacerbation of pre-existing conditions. However, the problem with that is that that's not supported by the record and the evidence that was submitted at the time of trial. What the doctors testified to was that Mr. Franklin was working full duty at the time that this accident happened. And this is also supported by my client's testimony and all of the evidence. None of the doctors disagree with this. He was working full duty at the time of the accident, and after the accident, he's not able to do that anymore. He was placed on restrictions by his physicians, and he had these symptoms that weren't present prior to, before this accident occurred. Are we taking these one at a time, but which accident are you referring to? There's two of them. We're talking about the March 2013 accident, Your Honor. Okay. So Dr. Dornette, who's treated this man on and off over the years, the last time he's seen him was several years prior. And he says that this accident in March clearly aggravated the pre-existing problems that he had in his low back and his neck. And that he required treatment for that. He said his condition did not return to a baseline of pre-injury status. That's also what I essentially got Dr. Robson to concede on cross-examination when I took his deposition. He indicated that, by definition, an exacerbation only lasts a period of time, several months. And therefore, if my client was still experiencing symptoms after that time, that that would not be considered an exacerbation. That's an aggravation that has not returned to its pre-injury status or its baseline. And that's what he testified to. That's also what Dr. Rothrock testified to, who was the respondent's expert on the need. What do you make of the Commission's decision indicating it found some credibility problems with respect to the claimant, that his testimony was inconsistent with information contained in his medical records, and he provided histories to his treating physicians that failed to accurately describe his pre-existing conditions? So they have these problems with the claimant's testimony. What are we to do with that? I don't think the Commission's decision with regard to my client's credibility is supported by the manifest way of the evidence. And the reason for that, Your Honor, is I asked all of his doctors about this during their depositions, including respondent's experts. Dr. Rothrock and Dr. Robson both testified that they found my client to be believable. They found my client to be credible. They didn't think he was exaggerating or malingering in any way. And in fact, the only entity or person to date that has found that my client is not credible is the Commission. The arbitrator found him to be credible. All of these doctors found him to be credible. Let me ask you a question. My notes here indicate that he testified that after September 2012 and before March 2013, his neck and back were, quote, doing great, and he was not experiencing any symptoms of pain and didn't think he sought treatment relative to those conditions. However, Dr. Ahmed's records seem to show numerous reports of left knee symptoms between April 2011 and March 2013. And reports of, quote, severe back pain, neck pain, left knee pain, and left hip chronic pain in 2013, one month prior to his alleged injury. And on the strength of that, one could think that the Commission might find that your client wasn't exactly telling the truth to them or to his other treating physicians. Well, to get to that point, Your Honor, I think one of the things that the Commission concluded, which was not supported by the evidence in this case, is they found that he was not honest with Dr., I think it was Dr. Munhoffin, about the fact that he had prior problems in those areas of his body. Dr. Munhoffin treated him for those same problems. So, and that those records are in evidence. So that conclusion is nonsensical, to be honest with you. It's not supported by the evidence, and those very records are in evidence. Well, so, I mean, that's true. Why did the claimant testify that he was asymptomatic until the month prior to his accident and was doing great when he had all of these surgeries? I mean, isn't, if somebody testifies they're doing fine, they have no problems, and you've got long histories of previous injuries and surgeries. Does that make any sense? Well, I think what Mr. Franklin does is he's a police officer. He may deal with pain, and his great may be different than somebody else's great. And what we know is before this accident, he was able to get up and go to work every day and apprehend suspects and take them to the ground. And then after this accident happened in March of 2013, he couldn't do that anymore. So I think that that's an important distinction that the Commission didn't take into consideration in this case, is that there's case law that says that that kind of evidence, which is in my client's favor, is proof of causal connection. When somebody's able to do their job, have an accident, and then can't do those same job duties, that supports a finding. And that's what happened here. And getting back to Dr. Rothrock, I actually put part of his deposition testimony in my brief because I thought it was significant. Dr. Rothrock essentially admitted that if my client was still having symptoms in his left knee, which he was, then that would not be considered an exacerbation that was temporary and that would constitute a permanent aggravation. So what about the February 20, 2014 accident? That's an issue, too. Right. So I think the Commission also, their finding with regard to that accident, I mean, they essentially found that my client didn't sustain any injuries on that day. Again, I think that that was not within their purview to do. I think that we stipulated, and the record shows that we stipulated that my client sustained accidental injuries to the parts of the body that were alleged in the application for adjustment of claim on that date of injury. So I think that they overstepped their bounds there. They're not entitled to do that. But even assuming you disagree with me there, respondent didn't provide any evidence to support that he didn't have an injury on that day. Well, as you know, the burden is always on the claimant. That's true. We're running out of time. I want to just leave you with this thought. The Commission noted that the claimant testified that his accident caused significant pain but he did not report it to Drs. Gornett, Monhoffin, or Dr. Mall when he saw them after the accident. Are you talking about the 2014 accident? Yes, February 2014. The claimant did not report the accident to Dr. Ahmed until literally two months later. Why would he not report it if he's experienced significant pain? He testified to that. He said that he didn't want to be somebody who was thought of as a complainer so he waited to fill out an accident report and seek treatment. Wait a minute. He didn't want to be thought of as somebody who was a complainer who filed well workers' compensation actions before this in a 20-year period? Come on. And second of all, whether Dr. Gornett was within the chain of referral, I'll read you the quotes from the deposition. In direct examination, his answer was, Sure. I have known the claimant dating back all the way back. It appears dating all the way back to August 2008. I saw him also referred by Dr. Monhoffin at that time for a problem that started on 7-2-0-8 in which he was involved in a motor vehicle accident. On cross-examination, he was asked, And some patients are referred to you by a claimant's counselor's law office for care and treatment of their spinal conditions. The answer was, You would have to ask them. This patient was referred by Dr. Monhoffin and was an established patient of mine. As far as other patients, it's an individual thing. And the commission observed that neither in Dr. Monhoffin's records or in Dr. Gornett's records, after March 2013, was there any indication of a referral. That's what the record shows. Okay. I see that my time has expired. Your Honor may have a brief moment to respond. Yes, you may. Sure, go ahead. Thank you. That's true. There's no referral contained in Dr. Monhoffin's records, but there's no evidence to suggest that he wasn't referred by Dr. Monhoffin. It's not their obligation to prove the negative, ma'am. You're right, Your Honor. But what we have is Dr. Gornett's testimony that says he was referred by Dr. Monhoffin and an established patient. So that right there is the evidence that I need, that I have. And they didn't provide anything to the contrary. Do you really think that, in light of his direct examination, that he's talking about Monhoffin referring him after March 2013, as opposed to Monhoffin having referred him way back in 2008? Yes. He's repeated the same thing. If somebody wanted him to say that he was referred in 2013, somebody should have asked him that. Counsel, you'll have time to respond. Thank you, Your Honor. May it please the Court, Counsel. My name is Jennifer Barbieri. I'm here on behalf of the City of East St. Louis. Your Honors, you know the standard of review. We've heard it all today. You've heard it all this morning. Every issue that has been raised in this is a manifest way to be evidence. The conflict of evidence, the question of facts, the reasonable emphasis from the facts, the medical issues, the evaluations of witnesses. You've seen the transcript. You've seen the records. The arbitrator's decision was 11 pages. The commission's decision was 17. I think it's safe to say that there are evidence on both sides of this case. If you would just go straight down and say, well, there's 50% supporting petitioner and 50% supporting respondent, just by the manifest way to the evidence, the decision has to be affirmed. Your Honors, Hudson and Hoffman, you've addressed the issue of outside the chain of referral ad nauseum. I think under the statute, under the commission rules, they could consider it. Yes, the evidence was there was no referral notes in Munhofen's notes. There was none in Dr. Ahmed's notes. There was none in Dr. Gornet's notes. There's no evidence of a letter to any of those physicians saying that there's a referral. I agree with your rate. That's how I took Dr. Gornet's deposition testimony when he said, you know, he came to me by way of Munhofen, that that was a referral from the 2008 incident. Did we adequately address the causal connection issues? I do believe you did, Your Honor. As far as the request for hearing form, that serves the function of reducing the issues that the arbitrator has to decide. Is that right? That is correct, Your Honor. And I mean, we all know how it's set up. The employer owes medical degrees, disputes, but isn't it more or less set up where in the absence of a dispute that you set out what that dispute is, it's deemed stipulated? Well, I guess, and that's a great point, Your Honor. When I filled out that stipulation report for this case, we had always disputed causal connection. The way I view that outside the chain of referral is under that causal connection framework. There is not a checkbox for outside the choice of referrals. So what we would have had to have done was... Okay. If... Can an injury be causally connected to the medical... the medical that's been provided for that injury and still be outside the chain of referrals? The way I would put that on the stipulation sheet is that no causal connection is in dispute. Because, again, I think that when you go outside the chain of referral it's no longer causally connected. Okay. What did you put on the medical? Causal connection for both accidents to March 2013 and February 14. Yes. And you say that covers outside the chain of referral? I believe it does, Your Honor. But even in this case if it didn't, there was still evidence that the treatment provided by Dr. Bourne was not necessary. And that's in the opinions of Dr. Ross. That's a different issue than outside the chain of referral. I'm still trying to hone in on the stip sheet here. Sure. And, you know, certainly, let me ask you this, if you just said no dispute as to payment  and you just said agree... Correct. ...then would you agree that you didn't preserve any issue about the chain of referral? I would agree in that situation it would not be preserved. If you're saying putting causal connection places into dispute whether or not some of the medical was outside the chain of referral. In this situation it doesn't matter. I'm just having a real hard time understanding that because, I mean, a chain of referral it doesn't matter if it is causally connected. Even if it's clearly causally connected if it's the third physician in that line of referrals you don't have to pay it. Right. That's what the statute says. Right. But that would be something that you could put like I said if I filled out the stip sheet in that situation... You're saying that means it's not causally connected if it's outside the chain of referral. That's how I... I'm just having a real hard time buying into that. Can you tell me in the absence of discovering a workers' compensation case how in heaven's name you would know whether a doctor was within the chain of referral unless it's contained within the medical records and that's unless and until he testifies? Can you ask him? Oh no, not necessarily, Your Honor. We've seen and with these doctors themselves Dr. Gornet will put in his actual treating records this patient was seen by... If there is no indication in the doctor's medical records that a patient was referred and who they were referred by how in heaven's name would you know whether he was within or without the chain of referral until he testifies? I guess you wouldn't, Your Honor. But you had the depositions before you went to hearing on this thing, yeah? I mean nobody came in and testified live or after you filled out the stip sheet. That's right. So you had everything you needed to know about the chain of referral when you filled out the stip sheet, right? Right, which is when I checked that it was not causally connected with the issue being that it was outside the chain of referral. You didn't put that in the stip sheet. You didn't put anything about the chain of referral in the stip sheet. That phrase does not appear in the stip sheet, Your Honor. You said causal connection was your only objection to medical. Correct. But there is also, as indicated, there is no stipulation on the sheet that says we agree that this is within the chain of referral. No, it's set up, the way the stip sheet is set up is for you to designate what your objections are to each of the claims of the petitioner. That's correct. And if you fail to object, it's deemed stipulated. Isn't that the way it's done? Yes, it is, Your Honor. All right. And again, that's a question of does the chain of referral, is that not causal connection? And you're indicating to me that it is not. Well, I'm just having a real hard time seeing how those two are linked together because, I mean, I think it's pretty clear in the law that even if it is causally connected, if it's outside the chain of referral, it doesn't get paid. And so just saying causal connection, I'm having a hard time seeing how that is the same as objecting to the chain of referral. And I understand that, Your Honor, and to the point is that even if you say that Dr. Gornet was within the chain of referral, if we would concede that, I do not, but if we would, the commission's decision is still appropriate wherein they relied on the opinions of Dr. Gornet that the treatment from Dr. Gornet was not necessary. So either way, Respondent, I don't believe that Petitioner showed the need for  with Dr. Gornet, either because he is outside the chain of referral, or because of the opinions of Dr. Gornet. Your Honor, I have been hearing that for years. With regards to the February 2014 accident, Justice Hoffman, again, I think you hit the nail on the head. We have a gentleman who went to his chiropractor, didn't report an accident, didn't report an increase of symptoms. None of the diagnoses changed. We have a Petitioner who goes to his orthopedic surgeon, doesn't mention an accident, doesn't mention an increase in symptoms, and in fact, Dr. Gornet's records on that visit after the February incident say this is all related to the March 2013 incident. Same thing with Dr. Maul. No mention of the accident, no mention of increased symptoms, no change in diagnoses, nothing to attribute to a new alleged accident. Based on all of the foregoing, it cannot be said that the Commission's decision on the matters of choice  physicians, the causal connection, the medical treatment, was against the manifest weight of the evidence. The Petitioner was not credible either with his testimony. The information opinions of the Section 12 examiners were supported by the medical records that they had reviewed as well as their discussions with the Petitioner. Based upon the foregoing, the Commission's decision is not against the manifest weight of the evidence and should be affirmed in its entirety. Thank you, Justice Stewart. I would like to go back to your questions about the stipulation sheet and on the request for hearing  Can I make a friendly suggestion about that too? If the stip sheet is an issue in the case, it would be great if it was  in the case. So we would have it with the brief and look at it? Yes, no problem. In your record, it's page 30 and 31. You have a chance to look it up when you get back. What it does is it sets up paragraph 13 on page 31. There is a section that talks about other issues not listed above. So any issue that's not agreed to that there's no specific paragraph for that needs to be listed. Would you read to us the paragraph about medical that appears in the stipulation sheet? Sure. There's a couple. Number 7 is petitioner claims respondent is liable for unpaid medical bills and respondent can either agree or dispute and respondent claims no causal connection except right arm. Number 8 is about credit for group medical payments so that's what it says. Number 13 is other issues not listed above where respondent indicated causal connection medical bills reasonableness of medical treatment medical care only if MMI determination. So is it fair to say I'm going back to one of Justice Hoffman's questions about how do you believe that there was no dispute about chain of referral? That's correct. And what we would have done and what I do all the time in trial is if I see on the stipulation sheet that that is in dispute I'll have my client testify to that. Now on the other hand if it just said dispute period and nobody wrote in causal connection then you having the burden of proof would have to realize that all the other issues not listed above are and then it gives the opportunity for some issues. Is there anything there? I just read to you. Read it again. Sure. Causal connection, medical bills. Is medical bills and causal connection set off with commas? Yes. Causal connection, medical bills, reasonableness of medical treatment, perspective medical care, and nature  extent. So medical bills are listed under the other. Correct. By the way, the failure of you parties to talk about that in your petition on their own? I think it does. Well, how about this? This is section 19B of the Workers' Compensation Act. The jurisdiction of the commission to review the decision of the arbitrator shall not be limited to the exceptions stated in the statute. When the case goes up on appeal then I think that that statute is talking about what there's a separate form when you file an appeal to the commission checking the issues that you are appealing to the commission and there's case law that talks about that if you raise the issue in your brief or check that box. Counsel, the cases say the commission can go into anything they want to go into that's supported by the record and that the administrative act and their rules to the extent that they have medical records and set it off with commons how then do you suggest that the issue of medical records wasn't in fact an issue or medical expenses was not in fact an issue it's set off with commons it's separate it's liability for medical bills but the reason for that dispute is not indicated somewhere else that's not under other it's kind of beating a dead horse I would thank you your honor in short when you look at the evidence in this case if you really look at what the testimony was my client the doctors the commission's decision isn't supported by what is in the medical records and what he testified to Ms. Barbieri did mention that everything was in dispute that's not the case they did not dispute the treatment for the right shoulder and elbow that was accepted by them and then what the commission did was found that Dr. Moll was outside the chain of referral so they denied that as well but that was accepted by the respondent  counsel both for your arguments in this matter it will be taken under advisement and written disposition shall issue thank you counsel